**SPEH et al. v. BULLARD et al.**

**No. 8013.**

Circuit Court of Appeals, Fifth Circuit.

May 13, 1936.

Mastin G. White, Sol., Department of Agriculture and Mary Connor Myers, Atty., Department of Agriculture, both of Washington, D. C., for appellants.

H. L. Anderson, of Jacksonville, Fla., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appeal is from the grant of an interlocutory injunction which until further order prohibits appellants, defendants be-

low, from paying out of a fund in their hands about $30,000 for the purpose of carrying on research and advertising work touching gum turpentine and ·gum rosin, under an agreement for marketing such products. to which appellees are parties. Appellants contend that the District Court is without federal jurisdiction, that it should have dismissed the bill for want of equity, and that in any case it misconstrued the contract.

Federal jurisdiction is claimed in the original bill on the ground that a construction and application of the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31 (see 7 U.S.C.A. § 601 et seq.), are involved, and by amendment that the Constitution of the United States (article 1, § 8, cl. 3; Amend. 5) in its provisions relating to· interstate commerce, the separation of judicial from executive powers, and the taking of property without due process of law, renders void the said act and the proceedings taken under it in reference to the contract here concerned. The bill states that plaintiffs sue for themselves and others in like situation who have rights in the fund in contention, consisting of about $55,000, made up of contributions by plaintiffs and other processors of gum turpentine ·and gum rosin under a marketing agreement which they signed together with the Secretary of Agriculture by virtue of section 8(2) of said act (48·Stat. 34). · It avers that the Secretary had, pursuant to power given him by the agreement, on August 1, 1935, revoked it, but that the Control Committee, represented by defendants, instead of distributing to the contributors the fund in their hands as they ought to do were without lawful right about to use it for the purpose of research and advertising through a corporation in process of establishment, and that they intend to, pay themselves and others large sums otherwise, and will dissipate the fund. The marketing agreement is exhibited, signed by some 1,200 processors. It is expressly grounded ·on the Agricultural Adjustment Act, relies upon its suspension of the Sherman Anti-Trust Act (15 U.S.C.A. §§ 1–7; 15 note), provides for the controlling of marketing of turpentine and rosin products through quotas and through licensing by the Secretary of Agriculture under the act. It provides for administration by a Control Committee, and among other things authorizes it "to establish or ·foster any agency for the purpose of, procuring to processors of gum turpen-

tine and gum rosin effective advertising and research." The Secretary is given authority at any time to terminate after one day's notice the whole agreement or any provision in it, and he is required to terminate it on request of 70 per cent. of the contracting processors, and it is provided "this agreement shall in any event terminate whenever the provisions of the Act authorizing it cease to, be in effect." "Upon the expiration of this agreement the amount collected pursuant hereto and not expended in the administration of the terms of this agreement shall be disbursed pro rata to processors in proportion to the amount originally contributed." The prayers are for injunction against paying out the fund as threatened, for a receiver of it, for an account, and for a winding up of the Committee's business and affairs.

The original bill made no attack on the Agricultural Adjustment Act. None of its provisions is set forth as calling for construction or application. It in fact contains no provision respecting the Control Committee or the funds in its hands. Probably no substantial federal question was proposed, but only a construction of the contract. But the amendment vigorously attacked the act as violative of the Constitution upon grounds some of which were later sustained in United States v. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. ——, 102 A.L.R. 914. The amendment is not so clear as it might be in setting forth the effect of invalidating the act on the contract and on the plaintiff's rights, but in the light of the answer which had been filed in which it was set up that the whole agreement had not been revoked by the Secretary on August 1, 1935, but that portions of it including that giving power to the Control Committee to foster research and advertising remained, we understand the contention to be that the whole contract was based on the act and that the secretary's activities were authorized only by the act, so that if the act should fall the agreement and the exemption from the Anti-trust Act would fall with it; and indeed, as above quoted, the agreement so provides. The failure·of the act to operate would tend to support the claim that the fund in hand ought to be divided and the Committee put out of business. We are of opinion that a material federal question was presented by the amendment which related back to the filing of the bill. Thus there is federal jurisdiction.

■ There is also equity in the bill. It is not alleged that the Control Committee are insolvent or that irreparable injury is about to be inflicted on the plaintiffs and their associates; but the jurisdiction rests upon the trusteeship of the Committee and upon the charge that they are about to waste the trust fund. A court of equity may in behalf of the numerous beneficiaries protect the money in hand as a trust estate, not belonging to the Committee but held for the use of others, and may control the trustees and apply the fund to its proper uses.

■ A receivership was denied and no appeal is taken from that judgment. The injunction under review is interlocutory. The court was well within a proper discretion in halting the threatened use of the fund until the further order of the court. Whether the Control Committee can still function to secure for the processors research and advertising, or whether the whole contract falls and absolutely ends with the decision against the act by the Supreme Court and its changes by Congress, had best be left to more deliberate consideration by the District Court on final decree. The contributors to the fund are all proper parties, and their presence could not prejudice jurisdiction. The court having the fund before it in the hands of the defendants who are under its control may desire by the usual means to require all the contributors to come in and to express their wishes as to the disposition of it. We leave the merits without direction or decision, merely affirming the interlocutory injunction as manifesting no abuse of discretion.

Judgment affirmed.